| | |
|---|---|
| **DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO**<br>Denver City & County Building<br>1437 Bannock Street<br>Denver, CO 80202<br>_____ | DATE FILED: April 28, 2023 5:09 PM<br>FILING ID: BD37E1815B7B7<br>CASE NUMBER: 2023CV31273 |
| **Plaintiff:**    **SUZANNE KUKURIS**<br><br>v.<br><br>**Defendants: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY**<br>_____<br>*Attorneys for Plaintiff*<br>Michael P. Kane, #34878<br>Francisco Martinez, #50227<br>**KANE DULIN MCQUINN YOUNG, LLP**<br>6400 S. Fiddlers Green Circle, Suite 1840<br>Greenwood Village, CO 80111<br>Telephone: 303-246-1111<br>Fax: 866-792-6396<br>mpk@trialproven.com<br>francisco@trialproven.com<br><br>Daniel J. Caplis, #13171<br>**THE DAN CAPLIS LAW FIRM, LLC**<br>Plaza Tower One Penthouse<br>6400 S. Fiddlers Green Circle, Suite 2200<br>Greenwood Village, CO 80111<br>Telephone: 303-770-5551<br>Fax: 303-770-5552<br>dan@caplislaw.com | ▲ **COURT USE ONLY** ▲<br><br>_____<br><br>**Case Number:**<br><br>**Division:** |
| **COMPLAINT AND JURY DEMAND** | |

       Plaintiff, Suzanne Kukuris, by and through her attorneys, KANE DULIN MCQUINN YOUNG, LLP AND THE DAN CAPLIS LAW FIRM, LLC, for her Complaint and Jury Demand against Defendant State Farm Insurance and Nationwide Property & Casualty Insurance Company, states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Suzanne Kukuris is now, and has been at all times relevant hereto, a resident of the State of Colorado.

2. Upon information and belief, Defendant State Farm Mutual Automobile Insurance Company (hereinafter "Defendant State Farm") is an Illinois corporation with a principle office address in Bloomington, IL and is authorized to conduct business in the State of Colorado.

3. Upon information and belief, and at all times relevant hereto, Defendant Nationwide Property & Casualty Insurance Company (hereinafter "Defendant Nationwide") is an Ohio Corporation that transacts business in the State of Colorado.

4. This Court has jurisdiction over the parties and subject matter of this action.

5. Venue is proper in the City and County of Denver under C.R.C.P. 98, because this is an action in tort and contract and State Farm and Nationwide are associations and residents of every state in which they have policyholders.

6. In the alternative, venue is proper, because State Farm and Nationwide are non-residents of this state, and Plaintiff designates the City and County of Denver as the county of venue for this action.

## GENERAL ALLEGATIONS

**A.     The Crash**

7. On September 24, 2019, at approximately 5:35 p.m., James Kukuris was driving a 2017 Hyundai Santa Fe.

8. On September 24, 2019, the 2017 Hyundai Santa Fe driven by James Kukuris was owned by his daughter, Alex N Deponte.

9. On September 24, 2019, at approximately 5:35 p.m., Suzanne Kukuris was the front passenger in the 2017 Hyundai Santa Fe driven by her husband, James Kukuris.

10. On September 24, 2019, at approximately 5:35 p.m., Dawn Wilson was driving a 2014 BMW 550i.

11. On September 24, 2019, at approximately 5:35 p.m., James and Suzanne Kukuris were traveling southbound on Highway 85 in Castle Rock, Colorado.

12. On September 24, 2019, at approximately 5:35 p.m., James and Suzanne Kukuris were stopped in traffic behind three vehicles at the intersection of Highway 85 and Meadows Parkway.

2

13. On September 24, 2019, at approximately 5:35 p.m., Dawn Wilson failed to stop and crashed into the rear of the vehicle occupied by James and Suzanna Kukuris.

14. After the crash, Ms. Wilson fled the scene, but was eventually apprehended by law enforcement.

15. The vehicle being driven by James Kukuris and occupied by Suzanne Kukuris sustained damage to its rear as a result of the crash caused by Ms. Wilson.

16. The vehicle being driven by Ms. Wilson sustained front-end damage as a result of the crash.

17. The crash was investigated by the Castle Rock Police Department.

18. After the investigation, Ms. Wilson was arrested and charged with Careless Driving, Failure to Notify Police of an Accident and Reckless Endangerment.

19. Ms. Wilson was negligent and caused the collision with the vehicle that Suzanne Kukuris occupied.

20. James Kukuris was not negligent with respect to the collision in question.

21. Plaintiff was not negligent with respect to the collision in question.

22. After the crash, Plaintiff complained of soreness in her neck, pain in her teeth, a headache and left shoulder pain.

23. On September 24, 2019, Plaintiff presented to the Emergency Department of Castle Rock Adventist Hospital, wherein she complained of pain to her nose, left upper teeth, roof of her mouth, head, neck, left shoulder and upper back.

24. On September 24, 2019, X-rays and CT scans demonstrated a closed fracture of the nasal bone, cervical spine multilevel spondylosis with degenerative listhesis, and a laceration to the bridge of the nose.

25. Plaintiff was discharged home the same day as the crash.

26. On September 25, 2019, Plaintiff presented to Martel Medical Offices, where she continued to complaint of pain in the roof of her mouth, upper teeth, neck, upper back and left shoulder.

27. On September 25, 2019, Plaintiff was diagnosed with concussion, headaches, neck pain, whiplash, mouth and teeth pain, vertigo, fatigue, confusion and facial pain and bruising.

28. On October 3, 2019, Plaintiff presented to Panorama Orthopedics & Spine Center, where she continued to complain of neck pain, radiating left arm pain, left shoulder pain, dizziness, nausea, headaches, tingling in her left fingers, and memory issues.

29. On October 3, 2019, Plaintiff was additionally diagnosed with post-concussive disorder, cervical strain, cervical radiculopathy and cervical facet hypertrophy. A soft cervical collar was provided for support and physical therapy was ordered.

30. On October 24, 2019, Plaintiff first presented to physical therapy at Panorama Orthopedics and ended up completing 22 sessions.

31. Plaintiff underwent injections ordered by Michael Horner, M.D. at Panorama Orthopedics while she participated in physical therapy.

32. Dr. Horner administered an interlaminar epidural steroid injection at C7-T1 on November 11, 2019, which provided little benefit.

33. Dr. Horner recommended and administered facet blocks at the right C4-5, C5-6, and the left C4-5 and C5-6 on December 30, 2019.

34. On December 29, 2020, Michael Menachof, M.D. with Advanced ENT & Allergy Center performed a nasal fracture reduction surgery on Plaintiff.

35. Plaintiff has continued to have cervical pain and treated with physical therapy, NSAIDs, facet injections, cervical epidural steroid injections, medical branch blocks and radiofrequency ablations.

36. On January 17, 2023, Dr. Horner authored a narrative about Plaintiff's treatment and care. Dr. Horner commented on Plaintiff's consistent chronic cervical pain. He went on to describe how Plaintiff continues to have pain despite exhaustive conservative treatment. At the time of the letter, Plaintiff had undergone extensive physical therapy, NSAIDs, facet injections, cervical epidural steroid injections, medical branch blocks and radiofrequency ablations.

37. Plaintiff continues to receive radiofrequency ablations for her cervical pain. Dr. Horner explained that the radiofrequency ablations help address her cervical pain, but not her structural integrity disrupted by the crash in question.

38. In his narrative, Dr. Horner further explained that Plaintiff's cervical pain is likely to continue for the foreseeable future and worsen as she ages. Eventually, Plaintiff will need surgery to address her ongoing cervical pain. Plaintiff will require a cervical fusion, followed by extensive physical therapy.

39. Plaintiff sustained injuries, damages and losses to her neck as a result of the crash in question.

40. Plaintiff sustained injuries, damages and losses to her back as a result of the crash in question.

41. Plaintiff sustained injuries, damages and losses to her head as a result of the crash in question.

42. Plaintiff sustained injuries, damages and losses to her face as a result of the crash in question.

43. Plaintiff suffered a broken nose as a result of the crash in question.

44. Plaintiff's back pain has significantly increased as a result of the crash and is permanent.

45. Plaintiff's neck pain has significantly increased as a result of the crash and is permanent.

46. Plaintiff's medical treatment for the injuries sustained in the crash was reasonable, necessary, and related to the crash.

47. Plaintiff's medical expenses for the treatment she received for her injuries were reasonable, necessary, and related to the crash.

**B. The Insurance Claims**

48. At the time of the crash, the 2017 Hyundai Santa Fe that Plaintiff occupied as a passenger was owned by Alex N Deponte.

49. At the time of the crash, the 2017 Hyundai Santa Fe was insured by Defendant State Farm under Policy No. 439179506A (the "State Farm Policy").

50. At the time of the crash, the State Farm Policy provided underinsured motorist ("UIM") coverage with limits of $100,000 per person and $300,000 per occurrence.

51. At the time of the crash, Plaintiff was insured by Defendant Nationwide, through her husband James Kukuris, under Policy No. 7205J013603 (the "Nationwide Policy").

52. At the time of the crash, the Nationwide Policy provided underinsured motorist ("UIM") coverage with limits of $300,000 per person and $300,000 per occurrence.

53. At the time of the crash, the vehicle Ms. Wilson was driving was insured under an automobile liability policy issued by American Family that provided bodily injury coverage with limits of $100,000 per person/per accident.

54. Following the crash, Plaintiff made a bodily injury claim with American Family.

5

55. Following the crash, Plaintiff made a UIM claim with her Alex N Deponte's UIM carrier Defendant State Farm (primary).

56. Following the crash, Plaintiff made a UIM claim with her UIM carrier Nationwide (secondary).

57. On October 4, 2019, Plaintiff's counsel sent a letter of representation to State Farm. The letter also asked for the insurance policy/declaration page, investigation documents and any transcripts created.

58. On October 4, 2019, Plaintiff's counsel sent a letter of representation to Defendant Nationwide, with claim number 675422-GJ. The letter also asked for the insurance policy/declaration page, investigation documents and any transcripts created.

59. On October 7, 2019, Defendant Nationwide responded to the October 4, 2019 letter, asking Plaintiff's counsel for a letter of representation, police report and claims information. The response also stated that "Med Pay" would be opened up, which was worth $10,000 and the "UI limits are $300/300k."

60. On October 9, 2019, Defendant State Farm sent Plaintiff's counsel a letter that acknowledged Plaintiff's representation and that they had requested the documentation in the October 4, 2019 letter.

61. On October 9, 2019, Defendant State Farm sent Plaintiff's counsel a letter, which described how Plaintiff would be entitled to compensatory damages if she sustained bodily injuries from an underinsured motorist. The insured was listed as "Alex N Deponte," the date of loss was September 24, 2019 and the claim number listed as "06-B671-2M3."

62. On October 15, 2019, Defendant Nationwide sent a letter that acknowledged their receipt of Plaintiff's "Medical Payment" claim. The letter contained a request that Plaintiff sign and return Medical Authorizations.

63. On November 13, 2019, Plaintiff signed the Medical Authorization submitted by Defendant Nationwide.

64. On January 24, 2020, Defendant State Farm sent a letter requesting all medical records and bills associated with Plaintiff's care.

65. On May 4, 2020, Defendant State Farm sent a letter requesting all medical records and bills associated with Plaintiff's care.

66. On August 25, 2020, Defendant State Farm sent a letter requesting all medical records and bills associated with Plaintiff's care.

67. On October 8, 2020, Defendant State Farm sent a letter that they were "Deactivating" Plaintiff's Underinsured Motorist Injury file.

68. On July 12, 2021, Plaintiff signed another Medical Authorization for Defendant Nationwide.

69. On September 21, 2021, Defendant Nationwide sent a letter to Plaintiff's counsel that the UIM claim had been reassigned to Lulu Weng.

70. On April 28, 2021, Plaintiff made a demand to Defendant State Farm for the underlying UIM policy limits. The demand outlined the facts from the crash, her treatment and provided her medical records and bills to date. The demand requested the policy limits from Defendant State Farm.

71. During the relevant time period when it evaluated Plaintiff's claim, State Farm had in their claims file the narrative letter from Dr. Horner detailing Plaintiff's ongoing pain and physical impairment.

72. On April 28, 2021, Plaintiff made a demand to Defendant Nationwide for the underlying UIM policy limits. The demand outlined the facts from the crash, her treatment and provided her medical records and bills to date. The demand requested the policy limits from Defendant Nationwide.

73. During the relevant time period when it evaluated Plaintiff's claim, Nationwide had in their claims file the narrative letter from Dr. Horner detailing Plaintiff's ongoing pain and physical impairment

74. In a letter dated May 5, 2021, State Farm consented to the settlement of the $100,000 policy limits for Ms. Wilson.

75. On May 6, 2021, American Family tendered the $100,000 policy limit for Ms. Wilson's policy.

76. On May 11, 2021, Defendant State Farm acknowledged receipt of the April 28, 2021 demand. Defendant State Farm inquired about scene photos, whether there was any lost wage information, and permanency. The letter also requested prior records from all treaters from 2014 to 2019.

77. On June 17, 2021, Plaintiff's counsel responded to Defendant State Farm's May 11, 2023 letter. The response contained a signed copy of a medical authorization that State Farm provided. Defendant State Farm was told about how Plaintiff did not have any photographs of the scene and that she was not making a wage loss claim. The letter indicated that the prior medical records had been requested and would be provided upon receipt. Records were provided from Castle Rock Adventist Hospital, Martel Medical Office, Touchstone Imaging, Panorama

7

Orthopedics, South Denver Surgery Center, Golden Ridge Surgery Center, Chirofit and Advanced ENT.

78. On June 18, 2021, Defendant State Farm sent a letter to Plaintiff's counsel om response to the June 18, 2021 letter. The response asked where Plaintiff was seated at the time of the accident, if Plaintiff had any photographs of the crash and acknowledged that Plaintiff' medical bills totaled $74,418.00 at that time.

79. On September 8, 2021, Defendant State Farm sent a letter to Plaintiff's counsel, asking for a specific release related to Castle Rock Adventist Hospital.

80. On September 13, 2021, Defendant State Farm sent a letter to Plaintiff's counsel, which indicates that an independent medical exam (IME) may be requested.

81. On August 30, 2022, Defendant State Farm sent a letter to Plaintiff offering $14,865.72. Defendant State Farm justified their offer with the $100,000 from the underlying bodily injury claim. Defendant State Farm's offer itemized Special Damages (Medical Bills Considered/Economic Loss) at $83,665.72; Future Special Damages (Medical Bills Considered/Economic Loss) at $2,500.00; General Damages/Non-Economic damages (i.e., Pain and Suffering, Inconvenience), and Physical Impairment and Disfigurement: $27,500.00; Future General Damages/Non-Economic damages (i.e., Pain and Suffering, Inconvenience) and Physical Impairment and Disfigurement: $1,200.00 for a total of $114,865.72.

82. On September 14, 2022, Defendant State Farm sent a letter requesting Plaintiff sign a specific authorization of release, which was provided on September 16, 2022.

83. On September 16, 2022, Plaintiff signed the special authorization of release and was sent to Defendant State Farm.

84. On September 28, 2022, Plaintiff's counsel sent a letter to Defendant State Farm, asking for an explanation of the value of the Future Special Damages and General Damages/Non-Economic Damages and Physical Disfigurement.

85. On October 2, 2022, Defendant State Farm sent a response to Plaintiff' counsel's letter. Defendant State Farm described how the Future Special Damages took into consideration additional treatment for sinusitis and sleep apnea. The General Damages/Non-Economic, and Physical Impairment and Disfigurement took into consideration pain and suffering for the claimed injuries, which included her broken nose. The only explanation for the "Pain and Suffering" and "Inconvenience" was that it was for her future pain and suffering for her injuries.

86. On October 11, 2022, Plaintiff's counsel sent a letter in response to Defendant State Farm's October 2, 2022 letter. Plaintiff's counsel explained how additional medical records were provided for Advanced ENT & Allergy, Golden Ridge Surgery Center, and Panorama Orthopedics & Spine Center.

8

87. The medical records detailed that Plaintiff is still suffering from cervical pain as a result of the crash. The pain is still present despite having undergone facet injections, epidural injections and radiofrequency ablations. Although the injections provide temporary relief, the pain and need for injections have persisted.

88. The November 17, 2022 letter asked about how the Future Special Damages was only valued at $2,500 since Plaintiff continued to receive injections. The letter also asked for an explanation as to how the General Damages/Non-Economic, and Physical Impairment and Disfigurement was evaluated.

89. On November 23, 2022, Defendant State Farm sent a response to Plaintiff's counsel's November 17, 2022 letter. The response from Defendant State Farm indicated that they had not received documents for treatment after July 2, 2021, which limited the scope of their evaluation. Defendant State Farm stated that the $1,200.00 was "on a range" and included Future General Damages/Non-Economic damages (i.e., Pain and Suffering, Inconvenience), and Physical Impairment and Disfigurement.

90. On January 19, 2023, Plaintiff's counsel sent a response to Defendant State Farm's November 23, 2022 letter. The response provided Dr. Horner's narrative, summary of her prior treatment and likelihood for continued injections and inevitable surgery. The letter again asked Defendant State Farm to reevaluate Plaintiff's Future Special Damages and General Damages/Non-Economic, and Physical Impairment and Disfigurement.

91. On February 16, 2023, Plaintiff's counsel sent a follow-up to the January 19, 2023 letter that was previously sent.

92. On February 23, 2023, the adjuster from Defendant Nationwide reached out to Plaintiff's counsel for an update on the claims. Plaintiff's counsel agreed to send all documents related with Plaintiff's claims.

93. On February 27, 2023, Plaintiff's counsel sent another letter, which has been unanswered.

94. On March 2, 2023, Plaintiff's counsel called State Farm and learned a new adjuster had been assigned to Plaintiff's claim. An email was sent the same day asking to speak with the new adjuster.

95. On March 2, 2023, Plaintiff's counsel resent all of Plaintiff' medical records and billing for her claim to Defendant State Farm.

96. On March 2, 2023, Plaintiff's counsel resent all of Plaintiff's medical records and billing for her claim to Defendant Nationwide.

97. On March 3, 2023, the newly assigned adjuster from Defendant State Farm called Plaintiff's counsel and said a new evaluation on Plaintiff's UIM claim would be conducted and compared with the prior evaluation.

98. On April 7, 2023, Plaintiff's counsel emailed Defendant Nationwide, asking if there was any progress in their evaluation.

99. On April 11, 2023, Defendant State Farm extended a settlement offer worth $42,184.50. The offer was categorized as their "top offer."

100. On April 11, 2023, Plaintiff's counsel inquired as to the justification for Defendant State Farm's $42,184.50 offer.

101. On April 13, 2023, Defendant State Farm categorized their $42,184.50 offer as "Past medicals: $88,684.50; Future medicals $7,500; Past P/S $42,400; Future P/S $3,600; Total $142,184.50; Underlying limits - $100,000 and Offer $42,184.50."

102. On April 20, 2023, Plaintiff's counsel reached out to Defendant State Farm and asked if they considered Dr. Horner's narrative about future surgery in relation to future treatment and pain and suffering. State Farm did not respond to the April 20, 2023 letter.

103. On April 20, 2023, Plaintiff's counsel spoke with Defendant Nationwide, who let him know that she has continued to work on the evaluation and would be getting back to him by Friday, April 28, 2023.

104. On April 25, 2023, Plaintiff's counsel spoke with Defendant Nationwide, who conveyed a $15,000.00 as the excess carrier. Defendant Nationwide did mention Plaintiff's ongoing cervical injections.

105. All conditions precedent to coverage under the State Farm Policy have been satisfied and/or have been waived or excused by Defendant State Farm.

106. Plaintiff has yet to receive policy limits offer from Defendant Nationwide in satisfaction of her UIM claim.

107. All conditions precedent to coverage under the Nationwide Policy have been satisfied and/or have been waived or excused by Defendant State Farm.

## FIRST CLAIM FOR RELIEF
**(Plaintiff against Defendant State Farm Breach of Contract)**

108. Plaintiff incorporates all other paragraphs as though fully set forth herein.

109. Defendant breached their insurance contract with Plaintiff by failing to pay her all sums she was legally entitled to recover as compensatory damages from the tortfeasor as a result of the collision, less the tortfeasor's $100,000 Policy, up to Plaintiff's $100,000 policy limit under State Farm's UIM Policy.

10

110. Defendant also breached the insurance contract by failing to conduct a timely and reasonable investigation and evaluation of Plaintiff's UIM claim.

111. Plaintiff advised Defendant State Farm of a claim for UIM benefits for this crash under its policy of insurance, and otherwise fully cooperated with Defendant State Farm in connection to the claim.

112. The State Farm Policy constitutes a contract of insurance.

113. Plaintiff is an intended beneficiary of Defendant State Farm's insurance policy/contract and is therefore entitled to enforce its terms.

114. All conditions precedent to Defendant State Farm's obligation to pay UIM benefits under the State Farm Policy were fulfilled and/or excused, in that the carrier knew that Plaintiff's injuries and losses were serious and substantial, and knew or should have known that the value of those injuries and losses exceeded the limits of the liability policy covering the at-fault driver in the September 24, 2019 crash.

115. Defendant State Farm has failed and/or refused to offer or pay the benefits owed to Plaintiff in satisfaction of her UIM claim.

116. As a result of Defendant State Farm's breach of contract, Plaintiff has suffered damages in amounts to be proved at trial.

## SECOND CLAIM FOR RELIEF
**(Plaintiff against Defendant State Farm for Statutory Relief under C.R.S. §§ 10-3-1115 and -1116)**

117. Plaintiff incorporates all other paragraphs as though fully set forth herein.

118. Defendant State Farm unreasonably denied and/or delayed payment of UIM benefits to Plaintiff without a reasonable basis.

119. C.R.S. §10-3-1116 provides in pertinent part that a first-party insurance claimant whose claim for benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs plus two times the covered benefit.

## THIRD CLAIM FOR RELIEF
**(Plaintiff against Defendant State Farm for Bad Faith Breach of Insurance Contract)**

120. Plaintiff incorporates all other paragraphs as though fully set forth herein.

11

121. Defendant State Farm acted unreasonably in the following respects, or any of them, and in any other respects ultimately revealed by the evidence: delaying payment of UIM benefits to Plaintiff; denying Plaintiff the full UIM benefits owed to her; failing to conduct a reasonable investigation of Plaintiff's UIM claim; failing to conduct a timely and reasonable analysis and evaluation of Plaintiff's UIM claim; disregarding its own claims calculations indicating Plaintiff was entitled to benefits; not attempting in good faith to effectuate a prompt, fair, and equitable settlement of a claim in which liability had become reasonably clear; and compelling Plaintiff to institute litigation to recover amounts due under insurance Policies by offering far less than the amounts ultimately to be recovered in this action.

122. Defendant State Farm recklessly disregarded the fact that its conduct and decisions with respect to Plaintiff's UIM claim were unreasonable.

123. As a direct result of Defendant State Farm's recklessly unreasonable conduct and decisions, Plaintiff sustained non-economic damages in a sum to be determined by the jury, including past and future mental pain and suffering, inconvenience, emotional distress, and impairment to the quality of her life.

## FOURTH CLAIM FOR RELIEF
### (Plaintiff against Defendant Nationwide Breach of Contract)

124. Plaintiff incorporates all other paragraphs as though fully set forth herein.

125. Defendant breached their insurance contract with Plaintiff by failing to pay her all sums she was legally entitled to recover as compensatory damages from the tortfeasor as a result of the collision, less the tortfeasor's $100,000 Policy, up to Plaintiff's $300,000 policy limit under Nationwide's UIM Policy.

126. Defendant also breached the insurance contract by failing to conduct a timely and reasonable investigation and evaluation of Plaintiff's UIM claim.

127. Plaintiff advised Defendant Nationwide of a claim for UIM benefits for this crash under its policy of insurance, and otherwise fully cooperated with Defendant Nationwide in connection to the claim.

128. The Nationwide Policy constitutes a contract of insurance.

129. Plaintiff is an intended beneficiary of Defendant Nationwide's insurance policy/contract and is therefore entitled to enforce its terms.

130. All conditions precedent to Defendant Nationwide's obligation to pay UIM benefits under the Nationwide Policy were fulfilled and/or excused, in that the carrier knew that Plaintiff's injuries and losses were serious and substantial, and knew or should have known that the value of

those injuries and losses exceeded the limits of the liability policy covering the at-fault driver in the September 24, 2019 crash.

131. Defendant Nationwide has failed and/or refused to offer or pay the benefits owed to Plaintiff in satisfaction of her UIM claim.

132. As a result of Defendant Nationwide's breach of contract, Plaintiff has suffered damages in amounts to be proved at trial.

### **FIFTH CLAIM FOR RELIEF**
**(Plaintiff against Defendant Nationwide for Statutory Relief under C.R.S. §§ 10-3-1115 and -1116)**

133. Plaintiff incorporates all other paragraphs as though fully set forth herein.

134. Defendant Nationwide unreasonably denied and/or delayed payment of UIM benefits to Plaintiff without a reasonable basis.

135. C.R.S. §10-3-1116 provides in pertinent part that a first-party insurance claimant whose claim for benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs plus two times the covered benefit.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for past and future economic, non-economic, physical disfigurement, and physical impairment damages, including, but not limited to: past and future medical expenses; past and future loss of earnings; reduced earning capacity; past and future physical and mental pain and suffering, inconvenience, emotional stress, and loss of enjoyment of life. Plaintiff seeks interest, costs, fees as permitted by law, and all penalties for unreasonable denial of benefits, and any further relief the Court deems just.

### **PLAINTIFF REQUESTS A TRIAL BY JURY**

Respectfully submitted this 28th day of April, 2023.

**KANE DULIN MCQUINN YOUNG, LLP**

*/s/ Francisco Martinez*
Francisco Martinez, #50227
*Attorneys for Plaintiff*
This document was filed electronically pursuant to Rule 121 § 1-26(7).

                                      The original signed document is on file in counsel's office.

Plaintiff's Address:
c/o
KANE DULIN MCQUINN YOUNG, LLP
Plaza Tower One Penthouse
6400 S Fiddlers Green Circle, Suite 1840
Greenwood Village, CO 80111

14